THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
OSCAR VEGA VEGA, Defendant and Appellant.

No. 12210.   Argued November 3, 1947.—Decided November 24, 1947.

*William Morales Torres* for appellant.   *Luis Negrón Fernández, Attorney General,* and J. *Rivera Barreras, Prosecuting Attorney* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

After holding a trial *de novo,* the District Court of Mayagüez found the defendant, Oscar Vega Vega, guilty of a violation of the Boli-pool Act and sentenced him to pay a fine of $100 or to be confined in jail one day for each dollar left unpaid, without costs.[1]

Feeling aggrieved by that judgment, the defendant has appealed to this Court, and in his brief he urges that the lower court erred (1) in finding him guilty of a violation of § 3 of the Act of July 27, 1935; (2) in admitting evidence which was unlawfully obtained; and (3) in weighing the evidence and considering the same sufficient to justify the judgment of conviction.

---

[1] Under § 54 of the Code of Criminal Procedure, as amended by Act No. 11 of April 8, 1916 (Laws of 1916, p. 44), the total imprisonment for nonpayment of the fine shall not exceed ninety days.

Since in our opinion the third error assigned has been committed by the lower court, it is not necessary for us to discuss the first two assignments. (The prosecuting attorney of this Court has consented to the reversal sought because he thinks that the error which we will presently discuss has been committed.)

The complaint alleges, in substance, that on February 17, 1946, at Sabana Grande, Puerto Rico, the defendant Oscar Vega Vega did unlawfully, wilfully, and maliciously violate the provisions of § 3 of Act No. 25 of July 17, 1935, in that on the aforesaid date and hour he was surprised in the act of handling "boli-pool" tickets, and comparing and making notes with a piece of pencil; and that "the defendant operated the evidence as an agent-manager."

Section 3 of Act No. 25 of July 17, 1935 (Spec. Sess. Laws, p. 152), provides that "Whenever the Insular Police of Puerto Rico, on a search warrant issued by the proper judge, surprises one or several persons in any room, house . . . which is devoted to *operating* the games known as *'bolita,'* 'boli-pool,' . . . it shall, after confiscating all the implements, . . . submit the case to the corresponding municipal court and to the district attorney, in order that such person or persons may be prosecuted in accordance with the provisions of this Act." Said Section does not fix any penalty and it is only in § 4 that we find the following: "and every owner, proxy, *agent,* person in charge, director, or *manager* of the games prohibited by this Act shall, upon conviction, be punished by a fine of not less than one hundred (100) dollars nor more than two hundred (200) dollars or by imprisonment in jail for a term of not less than sixty (60) days nor more than four (4) months." (Italics ours.)

The evidence for The People merely consisted of the testimony of policeman Vicente Garrastazú, who was one of the public officers who executed the search warrant issued against Amado Vega Vega, a brother of the appellant herein.

This witness testified, in brief, that on or about February 17, 1946, he was on duty in Sabana Grande; that he knew Oscar Vega Vega; that at 9 o'clock on the morning of said day and acting on a search warrant, he proceeded to search the house of Amado Vega Vega and surprised the defendant handling 219,500 "boli-pool" tickets and 731 lists, whereupon he arrested Oscar Vega Vega; that there was a box on top of a table and Oscar was dropping the tickets therein, after sorting them; that he seized them, after delivering to the defendant the search warrant, and arrested him and took him to headquarters; that at that time the defendant was alone and that when they entered, Oscar said: "they caught me"; [2] and that he knows how said game is operated.

The evidence for the defense, which was not believed by the lower court, tended to show that at the time the house of Amado Vega Vega was searched, the defendant was at the hospital of Sabana Grande, where he had taken an injured girl for medical treatment, and that upon his return to the house he was arrested by the police.

There was no evidence whatsoever tending to show that the defendant at the time of his arrest operated, as agent or manager, the evidence which was seized. The mere possession or holding, within a house or room, of any of the appliances, materials, or utensils used in the games prohibited by Act No. 25, *supra,* does not constitute a public offense. *People* v. *Toro,* 66 P.R.R. 681; *People* v. *Gómez (per curiam)* 61 *D.P.R.* 977, and *People* v. *Estronza,* 57 P.R.R. 880. For such a possession or holding to constitute an offense, it is indispensable that there should be other evidence tending to show that the room, building, or structure, etc., is devoted to the operation of the games referred to in said Act. *People* v. *Salabarría,* 57 P.R.R. 128, 130.

In the instant case, it will be remembered, the defendant was charged with the handling of "boli-pool" tickets

---

[2] Cf. *People* v. *Morales,* 51 P.R.R. 198, and *People* v. *Vidal,* 55 P.R.R. 226.

on a table, and that he handled them as agent-manager. The evidence introduced does not at all show that he acted in either capacity. Such term is not even mentioned in the testimony of the witnesses for the prosecution or for the defense who appeared in the case.[3] Section 4 of the Act, which as we have already indicated, is the one that fixes the penalty, punishes "every owner, . . . agent, . . . or manager . . ." As there was no evidence showing that the defendant acted in the capacity alleged in the complaint, one of the essential elements of the offense charged has not been proved. *People* v. *Salabarría, supra,* p. 130; *People* v. *Estronza, supra,* p. 881; and *People* v. *Castro (per curiam),* 59 *D.P.R.* 994. In these circumstances, the defendant should not have been convicted.

Therefore, the judgment appealed from should be reversed and the defendant acquitted.

---

[3] One of the witnesses of the defense was the policeman Ismael Cherena, who accompanied policeman Garrastazú in the search of the house of Amado Vega Vega, and who corroborated with his testimony that of Garrastazú.